## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| TRAYVON D. JOHNSON | CASE NO. 1:20-CV-01505-SL |
| Plaintiff, | JUDGE SARA LIOI |
| v. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

### INTRODUCTION

Plaintiff Trayvon D. Johnson filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying supplemental security income ("SSI") for the period after he reached the age of 18. (ECF #1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On May 25, 2021, this matter was reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I recommend that the District Court **AFFIRM** the Commissioner's decision as to Mr. Johnson's childhood disability, but **VACATE** for redetermination the Commissioner's decision as to the period after Mr. Johnson reached adulthood.

### PROCEDURAL BACKGROUND

Mr. Johnson, through representatives, filed for SSI on September 12, 2017, alleging a disability onset date of November 1, 2016. (Tr. 11). At the time, he was under the age of 18. (*Id.*). His claims were denied initially and on reconsideration. (*Id.*). Mr. Johnson then requested a

1

hearing before an administrative law judge. (*Id.*). Mr. Johnson (represented by counsel), his mother, a medical expert, and a vocational expert ("VE") testified at a hearing before the ALJ on February 6, 2019. (Tr. 51-118). Mr. Johnson turned 18 on February 13, 2019, the week after the hearing. (Tr. 61). On July 24, 2019, the ALJ issued a written decision finding Mr. Johnson was disabled as to the date prior to age 18, but not disabled as an adult. (Tr. 29-46). The ALJ issued an amended decision on August 9, 2019, correcting the dates in her prior decision.[1] (Tr. 24). The Appeals Council denied Mr. Johnson's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). *See* 20 C.F.R. §§ 416.1455, 416.1481. Mr. Johnson timely filed this action on July 8, 2020. (ECF #1).

## FACTUAL BACKGROUND

### I.  ADMINISTRATIVE HEARING

The following summarizes the testimony presented during the February 6, 2019 hearing before the ALJ:

Mr. Johnson appeared with counsel and his mother, Ms. Dianna Johnson. (Tr. 54). Also present at the hearing by telephone were Dr. William Silberberg, medical expert, and Mr. Daniel Simone, the VE. (Tr. 54-55).

---

[1]       The initial decision stated "[a]fter reviewing all of the evidence, the undersigned Administrative Law Judge concludes the claimant has not been disabled within the meaning of the Social Security Act since April 24, 2014, the date the application was filed" (Tr. 34) and "Based on the application for supplemental security income filed on April 24, 2014, the claimant was disabled as defined in section 1614(a)(3)(C) of the Social Security Act prior to September 11, 2015, the date she [*sic*] attained age 18. Based on the application for supplemental security income filed on April 24, 2014, the claimant is not disabled as defined in section 1614(a)(3)(A) of the Social Security Act." (Tr. 46). Although correcting some of the issues in the July 24, 2019 decision, the amended decision still retains the error "[a]fter reviewing all of the evidence, the undersigned Administrative Law Judge concludes the claimant has not been disabled within the meaning of the Social Security Act since April 24, 2014, the date the application was filed." (Tr. 12).

Mr. Johnson first testified he was going to turn 18 on February 13, the week after the hearing. (Tr. 61). He lived with his mother and grandmother, and could do some chores around the house, such as taking out the trash, doing dishes, and sweeping the floor when told. (Tr. 61-62, 65, 76). He could not do his own laundry or cook his own meals. (Tr. 75-76). He was generally able to care for his own grooming and take medications as prescribed. (Tr. 64-66). He had some small summer jobs. (Tr. 69-72). He testified he often played videogames, and played pick-up games of basketball at the rec center, but could only shoot the ball due to bullet wound injuries sustained in 2018. (Tr. 62-64, 73-74). This injury also prevented him from being active for sustained periods. (Tr. 74).

Mr. Johnson testified he had been in and out of schools, and most recently, had attended "homeschool" at ECOT[2] until it shut down. (Tr. 66-67, 81). He attributed his difficulty in school to an inability to focus, issues concentrating, and bullying from other students due to his borderline intellectual functioning. (Tr. 81-84). Despite his mother's continued advocacy, he did not receive an IEP. (Tr. 84). Mr. Johnson also testified about the rough circumstances at school and in his neighborhood; there were shootings at his school, and he witnessed multiple deaths due to gun violence. (Tr. 85-87). He witnessed his cousin's death, his nephew was killed right next to him, and he saw his friend killed when he was between 10-12 years old. (Tr. 87). He himself was shot while eating in the kitchen. (Tr. 90-91).

---

[2]      Electronic Classroom of Tomorrow (ECOT) was Ohio's largest online charter school until it shut down in the middle of the school year, in January 2018, after state officials required ECOT to repay nearly $80 million in public funds. Kantele Franco, *Ohio Unsure Of What Happened To 2,300 Former ECOT Students*, WOSU (July 5, 2018), http://news.wosu.org/news/2018-07-05/ohio-unsure-of-what-happened-to-2-300-former-ecot-students.

Mr. Johnson's mother also testified. (Tr. 93-106). She stated that Mr. Johnson's counselor at Murtis Taylor Human Services advised against working at the summer jobs, because "he wasn't mentally right" and his attention span was too short to stay on task. (Tr. 94, 103). She testified that Mr. Johnson was able to help with certain chores but was unable to do more complex tasks such as laundry or cooking without significant supervision. (Tr. 94-95). He sometimes needed reminders to care for his personal hygiene. (Tr. 95). And his mother testified to her concern that other children, even ones he thought were friends, would take advantage of him. (Tr. 95-96, 100). Ms. Johnson testified to her continued advocacy for her son, from helping him to obtain summer work (Tr. 94), to obtaining an IEP (Tr. 105), to his medical care. (Tr. 97).

Dr. Silberberg, a pediatrician, testified that Mr. Johnson satisfied all elements of Listing 112.05—childhood intellectual disorder. (Tr. 107-08). In Dr. Silberberg's opinion, Mr. Johnson's intellectual impairment met part (B)(1)(a) due to his IQ of 67 and "significantly subaverage intellectual functioning"; he also met part (B)(2) due to marked limitations in concentration, persistence, pace, and managing one's self, as was testified during the hearing. (Tr. 107-09). In his medical opinion, Mr. Johnson's asserted diagnoses of ADHD, PTSD, adjustment disorder, and borderline intellectual functioning were correct. (*Id.*). Dr. Silberberg did not testify as to Mr. Johnson's impairments under the adult Listings. The ALJ dismissed Dr. Silberberg with the statement that Mr. Johnson was a "possibly potential adult case" but did not further question him. (Tr. 110-11).

The VE also testified. The ALJ proposed a hypothetical individual the same age as Mr. Johnson ("about to turn 18"), and with the same education and work experience, who can perform simple, routine tasks, but not at a production-rate pace, and who can have occasional interactions

4

with supervisors, coworkers, and the public, limited to occasional routine workplace changes. (Tr. 112-13). The VE could not identify any jobs with those limitations. (Tr. 113). But if the same hypothetical individual could have frequent interactions with supervisors, coworkers, and the public, that individual could find work as a kitchen helper, housekeeping cleaner, or hand packager. (*Id.*).

## II.    PERSONAL AND VOCATIONAL EVIDENCE

Mr. Johnson was born on February 13, 2001 and was 16 years old when his application was filed. (Tr. 16). He was therefore defined as an "Adolescent[] (age 12 to attainment of age 18)." (*Id.*). *See also* 20 C.F.R. § 416.926a(g)(2)(v). He attained age 18 on February 13, 2019. (*Id.*). *See also* 20 C.F.R. § 416.120(c)(4). He was therefore defined as a "younger individual age 18-44." (Tr. 45). *See also* 20 C.F.R. § 416.963. Mr. Johnson has not been employed in work meeting the standard of "substantial gainful activity" ("SGA") under the Social Security Act ("Act"). (*Id.*). *See also* 20 C.F.R. §§ 416.924(b) and 416.972. Therefore, Mr. Johnson has no past relevant work experience. (*Id.*).

At the time of the hearing, Mr. Johnson was 17 years old and was in the eleventh grade, although he was not currently enrolled due to ECOT's mid-year closure. (Tr. 66-67, 81). The record indicates that ECOT may have lost Mr. Johnson's transcripts, which created problems for him when trying to enroll at another school. (Tr. 682). In addition, Mr. Johnson had a 504 plan that outlined a number of accommodations, including frequent breaks, frequent redirection, and extended time. (Tr. 291-97). Records indicate that at age 16, Mr. Johnson was tested as performing at a third grade level in math, approximately at a fifth grade level in reading and sentence comprehension, and a sixth grade level in spelling. (Tr. 424).

### III.   Relevant Medical Evidence[3]

At the time of the hearing on February 6, 2019, Mr. Johnson was not yet age 18. There are no medical records after that date. Mr. Johnson's available childhood records are summarized below.

Before I do so, however, I note the Commissioner's Brief asserted that the only relevant evidence was that used by the ALJ in reaching her adult determination decision, *i.e.*, only the records from Mr. Johnson's therapist at Murtis Taylor, Dr. Castro with Northeast Ohio Neighborhood Health Services, Inc., and emergency department records. (*See* Def.'s Br., ECF #19, PageID 842-44). I disagree. Childhood evidence can be relevant in an adult determination. *See* 20 C.F.R. §§ 404.1513, 404.1520b, 404.1520c. Childhood evidence is particularly relevant when evaluating Listing 12.05, which requires evidence demonstrating that the claimant's disorder began before age 22. *See* 20 C.F.R. § 404, Subpt. P, App. 1. *See also Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 460 (6th Cir. 2012). Therefore, although no adult medical records are available, I summarize the available evidence prior to Mr. Johnson's attainment of age 18, including the evidence relevant to Mr. Johnson's child and adult disability determinations.

### a.   Murtis Taylor Human Services

Murtis Taylor Human Services began providing mental health treatment for Mr. Johnson on January 13, 2016, after he witnessed the tragic death of his nephew in October 2015. (Tr. 393-406). The notes summarizing his initial meeting state that Mr. Johnson experienced frequent

---

[3]      Mr. Johnson challenges only the ALJ's determination that he was not disabled once he reached adulthood. (Pl.'s Br., ECF #16, PageID 813, 816 n.2). As such, he waives argument on issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003).

nightmares, flashbacks, depressed moods, and anger due to this incident. (Tr. 402). The notes also state that he had been assaulted in school, and "his face was forced over the toilet bowl and a lighter was set to his face." (*Id.*). Later progress reports indicate improvement of his PTSD symptoms; he was often euthymic but can be "easily frustrated and agitated with reactive anger." (Tr. 409). Notes indicate Mr. Johnson has had "long standing learning delays" but never received services pursuant to an IEP. (Tr. 415). He continued to have issues at school, despite his mother's advocacy, and was easily irritated, agitated, and frustrated. (Tr. 409). He was not prescribed medicine for his ADHD—possibly due to an abnormal EKG reading that prevented prescribing stimulants. (*Id.*).

On February 23, 2018, his case manager, Ms. Childers, wrote a letter describing Mr. Johnson's course of treatment: support regarding "the consequences and benefits of compliance, coping mechanisms, academic success, social and communication skills to help encourage and motivate [Mr. Johnson] to use self control when managing his PTSD symptoms while in the community, home and school setting to help ensure the decrease of negative and disruptive behaviors."[4] (Tr. 470).

### b. Emergency Department Records

In July 2018, Mr. Johnson presented to the University Hospital Cleveland Medical Center emergency room complaining of a bullet in his right buttock, but no other injuries. (Tr. 641-52). A CT of the pelvis showed a bullet in his gluteus maximus muscle but with no major hematoma present. (Tr. 649-50). The wound was irrigated and dressed, and Tdap was administered in the

---

[4]       Two letters from Ms. Childers are in the record, one dated February 23, 2018 (Tr. 470), the other dated October 25, 2018 (Tr. 724). Both are essentially identical.

trauma bay. (Tr. 646). After receiving this treatment, Mr. Johnson did not wish to continue with inpatient observation; he was discharged after he and his mother were counseled about the risks. (*Id.*). The bullet was never removed. (Tr. 73-75).

### c. Medical Opinions

On October 31, 2017, at the behest of the Commissioner, Mr. Johnson underwent a psychological evaluation with Michael Faust, Ph.D. (Tr. 419-27). Because Mr. Johnson was still age 18, the psychological evaluation was conducted based on the child standard and whether any impairments would affect his ability to function in an age-appropriate manner. (Tr. 419). Dr. Faust reviewed Mr. Johnson's medical and education records as part of his interview. (Tr. 420). His mother explained his difficulties in school and stated that he transferred to ECOT because "he couldn't understand and people tease him because he doesn't know things and they fight because people would pick on him." (Tr 421). Despite having a 504 Plan in place to provide additional accommodations, Mr. Johnson reported a learning disability, a difficult time maintaining attention, was disorganized, refused to do his schoolwork, and forgot to send in his assignments. (Tr. 420-21). Mr. Johnson stated he can shower daily, but his mother stated he forgets to and she must remind him. (Tr. 423). His mother noted he struggles with finishing his chores due to difficulty with organization and getting distracted. (*Id.*).

Dr. Faust conducted a Wechsler Adult Intelligence Scale-IV (WAIS-IV)[5] test, which yielded a full-scale IQ score of 67. (Tr. 423-24). This "placed him in the extremely low range of ability,

---

[5]     The Wechsler Intelligence Scale has been the "traditional 'gold standard' in intellectual assessment for many years" and is "based on carefully developed normative standards." Benjamin J. Sadock, Virginia A. Sadock & Pedro Ruiz, M.D., *Kaplan & Sadock's Comprehensive Textbook of Psychiatry*, Ch. 7 (10th ed., 2014). This test "provides a reasonable basis for estimating

which is viewed as significantly lower than expected due to attention deficits, variable effort, and a very reserved, withdrawn presentation." (Tr. 424). Dr. Faust estimated that Mr. Johnson was functioning in the borderline range, because he had issues sustaining the required amount of attention and persistence at self-directed tasks needed for the Processing Speed Index. (*Id.*). Dr. Faust diagnosed Mr. Johnson with PTSD, ADHD (combined presentation), and borderline intellectual functioning. (*Id.*). In his functional assessment, Dr. Faust opined that Mr. Johnson "understood instructions, but is rather simple in his thought processes." (Tr. 425). As a result, Mr. Johnson was "expected to exhibit difficulty with understanding and using information related to his borderline intellectual functioning, and this is compounded by his ongoing symptoms of PTSD and ADHD." (*Id.*). Dr. Faust reported that, due to the continued symptoms of his diagnoses, Mr. Johnson can be expected to exhibit difficulties in the areas of interacting and relating with others and caring for himself. (Tr. 425-26).

Mr. Johnson's record underwent initial review on November 21, 2017. (Tr. 128-34). In that review, agency examiners found that his mother's statements regarding Mr. Johnson's condition and daily functioning were generally consistent with the overall evidence and that he had problems with understanding, learning, maintaining attention, and behavioral issues. (Tr. 132). These examiners found that Mr. Johnson had the following severe impairments: ADHD, PTSD, and borderline intellectual functioning. (Tr. 129). They considered Listing 112.15 (covering child-standard trauma and stressor-related disorders) and Listing 112.11 (child-standard neurodevelopmental disorders). (Tr. 129-30). Based on their review of the record against these

---

an individual's level of premorbid abilities as well as the current level of intellectual functioning." *Id.* The most recent version—WAIS-IV—"offers the additional advantage of greatly extended age norms (ages 16 to 89)." *Id.*

Listings, the agency examiners found that Mr. Johnson's impairments were severe but did not meet or equal either of the considered listings. (*Id.*). The agency examiners did not consider Listing 112.05 (child-standard intellectual disorders). (*Id.*).

In March 2018, Mr. Johnson's record was reviewed at the reconsideration level. (Tr. 136-46). These agency examiners explained that because Mr. Johnson could still do most physical activities for his age and learn reasonably well in the classroom, he was not disabled. (Tr. 145). Again, these examiners reviewed Listings 112.15 and 112.11 but did not review Listing 112.05. (Tr. 141).

## THE ALJ'S DECISION

The ALJ's amended decision dated August 9, 2019 included the following findings of fact and conclusions of law:

1. The claimant was born on February 13, 2001 and was therefore in the "Adolescents (age 12 to attainment of age 18)" age group on September 12, 2017, the date the application was filed (*see* 20 CFR 416.926a(g)(2)(v)). The claimant attained age 18 on February 13, 2019 (20 CFR 416.120(c)(4)).

2. The claimant has not engaged in substantial gainful activity since the date the application was filed (20 CFR 416.924(b) and 416.972).

3. Before attaining age 18, the claimant had the following severe impairments: attention-deficit hyperactivity disorder, PTSD, borderline intellectual functioning, and adjustment disorder (20 CFR 416.924(c)).

4. Before attaining age 18, the claimant had an impairment or combination of impairments that met or medically equaled Listing 112.05 in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.924, 416.925, and 416.926).

5. The claimant was disabled prior to attaining age 18, because she [*sic*] had an impairment or combination of impairments that met the listings (20 CFR 416.924(a)).

6.      The claimant has not developed any new impairment or impairments since attaining age 18.

7.      Since attaining age 18, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 416.920(c)).

8.      Since attaining age 18, the claimant has not had an impairment or combination of impairments that meets or medically equals a listed impairment (20 CFR 416.920(d)).

9.      After careful consideration of the entire record, the undersigned finds that, since attaining age 18 the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to perform simple, routine tasks, but not a production rate pace. Can frequently interact with supervisors, coworkers, and the public. He is limited to occasional routine workplace changes.

10.     The claimant has no past relevant work (20 CFR 416.965).

11.     The claimant is currently a "younger individual age 18-44" (20 CFR 416.963).

12.     The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

13.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

14.     Since attaining age 18, considering the claimant's age, education, work experience, and residual functional capacity, jobs have existed in significant number in the national economy that the claimant has been able to perform (20 CFR 416.960(c) and 416.966).

15.     The claimant has not been under a disability, as defined in the Social Security Act, since February 13, 2019, the day the claimant attained age 18, through the date of this decision (20 CFR 416.924(a) and 416.920(g)).

(Tr. 16-24). With these findings, the ALJ determined Mr. Johnson was disabled under the child

disability standard as defined in § 1614(a)(3)(C) of the Act, from September 12, 2017 to February

13, 2019, when he reached age 18. (Tr. 24). She further found Mr. Johnson not disabled under

the adult disability standard in § 1614(a)(3)(C) of the Act as of February 13, 2019, the date he attained age 18. (*Id.*). (Of note, § 1614(a)(3)(C) of the Act is not an adult standard; rather, it is the standard for "[a]n individual under the age of 18.")

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security,* 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up). A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the

12

decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted).

Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

### I.  Child Standard

For claimants under the age of 18, the Commissioner follows a three-step evaluation process—found at 20 C.F.R. § 416.924(a)—to determine if a claimant is disabled:

1.  Is claimant engaged in a substantial gainful activity? If so, the claimant is not disabled regardless of their medical condition. If not, the analysis proceeds.

2.  Does claimant have a medically determinable, severe impairment, or a combination of impairments that is severe? For an individual under the age of 18, an impairment is not severe if it causes a slight abnormality or a combination of slight abnormalities which causes no more than minimal

functional limitations. If there is no such impairment, the claimant is not disabled. If there is, the analysis proceeds.

3. Does the severe impairment meet, medically equal, or functionally equal the criteria of one of the listed impairments? If so, the claimant is disabled. If not, the claimant is not disabled.

To determine whether an impairment or combination of impairments functionally equals a listed impairment, the minor claimant's functioning is assessed in six different functional domains. 20 C.F.R. § 416.926a(b)(1). If the impairment results in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain of functioning, then the impairment is of listing-level severity and therefore functionally equal to the listings. *Id.* § 416.926a(a).

A "marked" limitation is one that is more than moderate but less than extreme, and interferes "seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i). "It is the equivalent of functioning [one] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id.* An "extreme" limitation is one that interferes "very seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3)(i). The six functionality domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id.* § 416.926a(b)(1). In determining functional equivalence, the ALJ must consider the "whole child." Social Security Ruling 09–lp, 2009 WL 396031, at *2.

Listing 112.05 applies to childhood intellectual disorders. This Listing's paragraphs A and B require the claimant have "significantly subaverage general intellectual functioning" such that the child is dependent on others beyond what is age appropriate, or else have extreme or marked

limitations in the ability to understand, remember, and apply information, interact with others, concentrate, persist, or maintain pace, or adapt and manage oneself. 20 C.F.R. Part 404, Subpart P, Appendix 1. In full, Listing 12.05 states:

> **112.05 Intellectual disorder, for children age 3 to attainment of age 18, [is] satisfied by A or B:**
> A.  Satisfied by 1 and 2:
>> 1.  Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
>> 2.  Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) in excess of age-appropriate dependence.
>
> OR
> B.  Satisfied by 1 and 2:
>> 1.  Significantly subaverage general intellectual functioning evidenced by a or b:
>>> a.  A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>>> b.  A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>> 2.  Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>>> a.  Understand, remember, or apply information; or
>>> b.  Interact with others; or
>>> c.  Concentrate, persist, or maintain pace; or
>>> d.  Adapt or manage oneself.

*Id.*

## II.     Adult Standard

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if an adult claimant is disabled:

1.     Was claimant engaged in a substantial gainful activity?

2.     Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.     Does the severe impairment meet one of the listed impairments?

4.     What is claimant's residual functional capacity and can claimant perform past relevant work?

5.     Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity ("RFC") to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only those claimants who satisfy each element of the analysis, including inability to do other work, and meet the duration requirements, are determined to be disabled. 20 C.F.R. § 416.920(b)-(f) *see also Walters*, 127 F.3d at 529.

To evaluate the severity of mental impairments in adults, the Commissioner applies a "special technique" at each step of the five-step analysis. 20 C.F.R. § 404.1520a. Under this special technique, the Commissioner first evaluates pertinent symptoms, signs, and laboratory findings to determine whether a claimant has a medically determinable impairment. 20 C.F.R.

16

§ 404.1520a(b)(1). On finding a medically determinable impairment, the Commissioner then rates

the degree of functional limitation resulting from the impairment. 20 C.F.R. § 404.1520a(b)(2).

Assessing functional limitations is "a complex and highly individualized process that

requires [the Commissioner] to consider multiple issues and all relevant evidence to obtain a

longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R.

§ 404.1520a(c). The Commissioner uses all relevant medical and nonmedical evidence in the

record to evaluate a claimant's functional limitations. *Id.* The Commissioner rates the degree of

functional limitation based on the extent to which the claimant's impairment interferes with the

"ability to function independently, appropriately, effectively, and on a sustained basis," and

therefore considers "such factors as the quality and level of [the claimant's] overall functional

performance, any episodic limitations, the amount of supervision or assistance [the claimant]

require[s], and the settings in which [the claimant is] able to function." *Id.*

Listing 12.05 applies to adult intellectual disorders. This Listing's paragraphs A and B

require the claimant have "significantly subaverage general intellectual functioning; significant

deficits in current adaptive functioning; and evidence that demonstrates or supports (is consistent

with) the conclusion that [the claimant's] disorder began prior to age 22." 20 C.F.R. Part 404,

Subpart P, Appendix 1. In full, Listing 12.05 states:

> **12.05 Intellectual disorder, [is] satisfied by A or B:**
> A. Satisfied by 1, 2, and 3:
>    1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
>    2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

       3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B. Satisfied by 1, 2, and 3:

       1. Significantly subaverage general intellectual functioning evidenced by a or b:

            a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

            b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

       2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

            a. Understand, remember, or apply information; or

            b. Interact with others; or

            c. Concentrate, persist, or maintain pace; or

            d. Adapt or manage oneself; and

       3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*Id.*

Listings 112.05 and 12.05, while distinct, are analogous, and are evaluated in similar ways. *See* 20 C.F.R. § 416.926 (medical equivalence for adults and children). The material difference between these listings is in point three of Listing 12.05—whether the evidence demonstrates that the claimant's intellectual disorder began prior to the attainment of age 22. *Compare* 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 112.05 and 12.05.

DISCUSSION[6]

On appeal, Mr. Johnson argues: (1) the ALJ's decision was not supported by substantial evidence because the ALJ's evaluation of the statements of Mr. Johnson and his mother failed to comply with the requirements of Social Security Ruling (SSR) 16-3p; and (2) the ALJ's RFC finding was not supported by substantial evidence and the ALJ had a responsibility to develop the record further. (Pl.'s Br., ECF #16, PageID 828, 832). The Commissioner makes a facial argument against Mr. Johnson's appeal, contending that Mr. Johnson has not sufficiently shown the Commissioner erred or that the error was harmful. (Def. Br., ECF #19, PageID 842 n.1, 847-53). I address these arguments in turn.

**I.     Mr. Johnson showed that the Social Security Administration erred, and that the error was harmful.**

The Commissioner argues Mr. Johnson's complaint fails on its face because he does not show the ALJ's alleged error prejudiced him. (Def.'s Br., ECF #19, PageID 847). The Commissioner cites to *Shinseki v. Sanders* and its premise that to obtain remand in a federal court, the party against the agency's determination has the burden to demonstrate (1) the agency erred, and (2) the error was harmful. 556 U.S. 396, 409 (2009). The Commissioner further argues that Mr. Johnson waived his argument by failing to identify any alleged harm. (Def.'s Br., ECF #19, PageID 848). Citing *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006), for the proposition that "[a]n argument first presented to the Court in a reply brief is waived," the Commissioner argues Mr. Johnson's omissions create a presumption that any error was harmless. (*Id.*).

---

[6]     I extend my sincere thanks to counsel for the supplemental briefing I requested relative to the issue of disability redetermination as an adult. Although that issue ultimately was inapplicable, the parties' briefs provided additional insight concerning Mr. Johnson's appeal that assisted in my recommendation provided below.

I find the Commissioner's reliance on *Shinseki* and *Abboud* to be misplaced. *Shinseki* spoke specifically to the Court of Appeals for Veterans Claims and the type of harmless-error review that court should apply, as grounded in 38 U.S.C. § 7261(b)(2). *Shinseki*, 556 U.S. at  406. The Commissioner correctly recognizes that, when applicable, *Shinseki* requires the claimant to show that an agency's error was harmful. *Id.* But *Shinseki* also holds that an erroneous ruling may be "harmful and nothing further need be said." *Id.* at 410; *Koutrakos v. Astrue*, 906 F. Supp. 2d 30, 38 (D. Conn. 2012) (distinguishing *Shinseki* in social security appeals). Mr. Johnson's alleged harm is that the ALJ failed to follow the agency's procedures and found him not disabled as an adult. (Compl., ECF #1, PageID 1; Pl.'s Br., ECF #16, PageID 813, 828-36). In my view, this is the type of obvious harm such that "nothing further need be said." *Shinseki*, 556 U.S. at 410.

Further, Mr. Johnson explains the ways in which the ALJ failed to follow agency requirements, resulting in harm and prejudice. (Pl.'s Br., ECF #16, PageID 813, 828-36). Namely, Mr. Johnson alleges the ALJ's decision was not supported by substantial evidence, did not sufficiently explain the weight she gave to non-medical testimony, and did not adequately develop the record to support her RFC finding. (*Id.*). Throughout his brief, Mr. Johnson points to internal agency guidance and applicable case law. (*Id.*). Thus, I conclude that even if this were not the type of error about which "nothing further need be said," Mr. Johnson met his burden of showing actual harm and prejudice.

Finally, the Commissioner's reliance on *Abboud* also fails, because Mr. Johnson's alleged harms were not first raised in a *reply* brief. Rather, they were first outlined in his opening merits brief before this Court. (*See id.*). For all of these reasons, I find the Commissioner's facial attack on

Mr. Johnson's complaint not well-taken. Therefore, I will proceed to consider the merits of Mr. Johnson's claim.

## II. The ALJ appropriately complied with the requirements of SSR 16-3p as to Mr. Johnson's disability determination.

Mr. Johnson argues he is entitled to judicial relief because the ALJ did not explain the weight she gave to his and his mother's statements about his symptoms. (Pl.'s Br., ECF #16, PageID 828). The Commissioner contends the ALJ appropriately considered Mr. Johnson's and his mother's subjective complaints and properly analyzed the evidence in compliance with SSR 16-3p. (Def.'s Br., ECF #19, PageID 849). I agree with the Commissioner: the ALJ reviewed the evidence before her according to the requirements of SSR 16-3p.

SSR 16-3p describes the two-step evaluation process by which an individual's symptoms are evaluated. In step one, the Commissioner determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. In step two, the Commissioner evaluates the intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to perform work-related activities (if an adult) or to function in an age-appropriate manner (if a child). *Id.* At the second stage, the ALJ may consider evidence directly from the claimant, or gleaned from other medical and non-medical sources (such as family and friends). *Id.*

Absent objective medical evidence sufficient to find a claimant's disability, the claimant's statements of the intensity, limiting effects, and persistence of the claimant's symptoms will be considered with other relevant evidence. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18 CV 0098, 2019 WL 1282105, at *1 (N.D. Ohio Mar. 20, 2019) (citing SSR 16-3p). If the objective medical evidence supports a finding that the individual is disabled, the individual's symptoms may be

evaluated on the objective medical evidence alone. SSR 16-3p. The ALJ may consider the claimant's subjective statements, but "will not find an individual disabled based on alleged symptoms alone." *Id.* When adjudicating, the ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* The ALJ need not use any "magic words," as long as it is clear from the decision as a whole why the ALJ reached a specific conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617-JDG, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021). The ALJ's evaluation of subjective evidence receives broad deference from the reviewing court. *Baumhower*, 2019 WL 1282105, at *2. This Court may not disturb the ALJ's analysis of the claimant's subjective complaints, and the conclusions drawn from it, absent compelling reason. *Id.* (internal quotations and citations omitted).

Here, there was objective medical evidence available to determine Mr. Johnson's disability without relying on his subjective complaints. In addition to evaluating the objective medical evidence—and providing clear weight to those opinions—the ALJ addressed Mr. Johnson's subjective complaints in her decision. For example, she states, "the claimant alleged that he has difficulty getting along with others. However, according to his statements, the claimant is also able to spend time with friends and family" and "claimant asserted that he has difficulties managing his mood. That said, the claimant also stated that he is able to handle self-care and personal hygiene," "[t]he claimant testified at the hearing that he enjoys playing sports and his family," and "he worked at the Boys and Girls Club where he watched over other students, and he testified that he had no trouble doing that job." (Tr. 19-20). When reviewing other records, the ALJ also noted

reports from Mr. Johnson's mother. (Tr. 21). Reading the ALJ's determination as a whole, I do not find a compelling reason to disturb the ALJ's analysis of Mr. Johnson's subjective complaints on this basis.

### III.  The ALJ failed to develop the record as to Mr. Johnson's adult disability.

Although the ALJ appropriately addressed Mr. Johnson's subjective complaints under SSR 16-3p, I conclude the ALJ failed in her duty to develop the record as to his adult disability. Mr. Johnson contends that the ALJ's RFC finding—key to finding no disability as an adult—was made without any medical opinion evidence concerning his functional limitations. (Pl.'s Br., ECF #16, PageID 832). The Commissioner counters that the development of a claimant's RFC is solely within the ALJ's authority and that opinion evidence is unnecessary in that determination. (Def.'s Br., ECF #19, PageID 853). The Commissioner is correct that the RFC determination is solely for the ALJ to make. But the Commissioner fails to recognize that an agency must follow its own procedures or otherwise risk prejudicing or depriving the claimant of substantial rights. *Wilson*, 378 F.3d at 546-47. I conclude that is what happened here.

While the claimant has the ultimate burden to establish an entitlement to benefits, the ALJ has the ultimate responsibility to ensure every claimant receives a full and fair hearing. *Richardson v. Perales*, 402 U.S. 389 (1971); *see also Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). Social security proceedings are "inquisitorial rather than adversarial" and the ALJ is therefore charged with developing the facts. *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). There is no bright-line test to determine when the ALJ has failed to develop the record fully such that it prejudiced the claimant. *Lashley*, 708 F.2d. at 1052. This Court reviews to determine whether there is "substantial evidence on the record as a whole to support the decision of the Secretary." *Id*.

23

at 1053. But where an ALJ fails to develop the record, the ALJ is without sufficient facts to make a decision and thus the decision is not supported by substantial evidence. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (collecting cases). Moreover, when the ALJ fails to develop the record fully, the reasons given for the determination also fail to "build an accurate and logical bridge between the evidence and the result." *Fleischer*, 774 F. Supp. 2d at 877 (internal quotations omitted).

The question of determining a claimant's RFC is for the ALJ to make, and the ALJ may do so without relying on a medical opinion. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x. 395, 401 (6th Cir. 2018). Even so, however, when establishing an RFC, the ALJ is "responsible for developing [a claimant's] complete medical history, including arranging for a consultative examination if necessary." 20 C.F.R. § 416.945(a)(3). As such, the regulations require an ALJ to "develop a complete record by obtaining opinion evidence, if necessary." *Falkosky v. Comm'r of Soc. Sec.*, No. 1:19-CV-2632, 2020 WL 5423967, at *5 (N.D. Ohio Sept. 10, 2020). Although the responsibility to develop the record when determining an RFC does not apply in all cases, some circumstances warrant obtaining a medical opinion to satisfy the requirements of 20 C.F.R. § 404.1545(a)(3). *See Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008); *see also* <u>*Falkosky*</u>, 2020 WL 5423967, at *6. One such circumstance is when an ALJ makes an RFC determination based on *no* medical source opinion. *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-CV-25, 2011 WL 5024866, at *2, (N.D. Ohio Oct. 2, 2011).

Here, there is no evidence supporting the ALJ's conclusion that Mr. Johnson was not disabled, or that his disability changed in some way, once he reached age 18. There is no evidence in the record dated after February 5, 2019. (*See* Tr. 347-57). Mr. Johnson turned 18 on February

13, 2019. (Tr. 16). The ALJ was aware of this, given that at numerous points she acknowledged Mr. Johnson was a child but had almost reached age 18. (Tr. 59, 61, 112). Despite having no record evidence after Mr. Johnson reached age 18, the ALJ extended her decision to find him disabled as a child at step three, but not disabled an adult and proceeded through all five steps. (Tr. 24). The ALJ made this determination after finding multiple experts unpersuasive because they had not examined Mr. Johnson as an adult or under the adult standard for disability. (Tr. 22). But just as the RFC determination is for the ALJ alone to make, so too is it for the ALJ alone to determine medical equivalence as against the Listings. 20 C.F.R. § 416.926(e).

Substantial evidence is lacking when a medical opinion is deemed unpersuasive because it only considers the childhood listing and not the corresponding (and similar) adult Listing. Similarly, substantial evidence is lacking in a decision stating that an examiner finding a full-scale IQ score of 67 (on a standard encompassing individuals age 16-89) is only somewhat persuasive because no Listings were analyzed. And substantial evidence does not exist when concluding a medical expert can be relied on to find a child disabled based on Listing 112.05 but not as to Listing 12.05 *when that question was not even asked of the medical expert when the opportunity presented itself.* (Tr. 22). Therefore, using this reasoning to support a determination, coupled with the failure to develop additional evidence showing that Mr. Johnson's impairment changed prior to turning age 18 (POMS DI 25201.010C2a), represents the type of logical bridge that a subsequent reviewer is unable to cross and follow the ALJ's reasoning.

Because there is no evidence in the record dated after Mr. Johnson became an adult, I find the ALJ's decision not supported by substantial evidence. Remand is warranted for the ALJ to

develop the record and receive appropriate evidence as to Mr. Johnson's functional capacity after he reached age 18.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I find the ALJ's decision denying SSI is not supported by substantial evidence. I further find that Mr. Johnson was not afforded a full and fair hearing as is his right. Therefore, I recommend that the District Court **AFFIRM** the Commissioner's decision as to Mr. Johnson's childhood disability, but **REMAND** the Commissioner's decision as to adult disability and direct the Commissioner to conduct additional proceedings as to Mr. Johnson's disability after attainment of age 18.

Dated: September 13, 2021

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. See United States v. Walters, 638 F.2d 947 (6th Cir. 1981); Thomas v. Arn, 474 U.S. 140 (1985).**